UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

HANMING FENG, *on behalf of himself and others* :
*similarly situated*,

:

Plaintiff, :

-against- :

:

SOY SAUCE LLC, *d/b/a SOYSAUCE Glatt Kosher* :
*Chinese Take Out*, and :
GAVRIEL BORENSTEIN :

:

Defendants. :

------------------------------------------------------- x

FILED
US DISTRICT COURT E.D.N.Y
DEC 22 2017
BROOKLYN OFFICE

MEMORANDUM DECISION & ORDER
15-CV-3058 (ENV) (LB)

VITALIANO, D.J.

Seeking to recover allegedly unpaid minimum and premium wages, plaintiff Hanming

Feng, on behalf of himself and all others similarly situated, chose to bring not only his federal

but also his state wage and hour claims against his former employer, Soy Sauce LLC ("Soy

Sauce"), and its owner-operator Gavriel Borenstein in federal court. The complaint alleged

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), and New York

Labor Law, N.Y. Lab. Law § 190 *et seq.* and § 650 *et seq.*, ("NYLL"). (Am. Compl. ¶¶ 1, 5,

ECF No. 12.) Borenstein is proceeding *pro se*. Because Soy Sauce never appeared in the action,

having failed to acquire counsel, and as a corporation, unable to appear *pro se*, its default was

noted on October 18, 2017. (*See* Order, Oct. 18, 2017.)

Before the close of discovery, Borenstein moved for summary judgment, arguing that

plaintiff's federal claims must be dismissed because Soy Sauce was not subject to FLSA

jurisdiction and, absent a justiciable federal claim, supplemental jurisdiction over the remaining

state law claims should be declined. (*See* Mem. of Law in Support of Def. Borenstein's Mot.

Summ. J. at 3, ECF No. 58-2.) Thereafter, Magistrate Judge Lois Bloom issued a Report and

Recommendation[1] finding that there was a genuine issue of material fact as to whether Soy Sauce's gross annual sales were in excess of the $500,000 threshold necessary for FLSA coverage. (*See* R. & R. at 14, ECF No. 76.)

In light of these findings, and in an effort to honor comity between our federal and state courts systems and, to do so in a manner that maximized judicial efficiency, the Court ordered the issue of whether Soy Sauce had gross sales that would render it subject to FLSA jurisdiction, and an essential element of that claim, to be tried first and separately from all other wage issues. During a pre-trial conference on September 7, 2017, plaintiff was warned that should he fail to carry his burden on this element, the FLSA claim would fail and the Court would decline to exercise supplementary jurisdiction over the state law claims.

A one day trial to the Court sitting without a jury took place on November 20, 2017. Having considered the testimony, the exhibits received in evidence and the arguments of the parties, this Memorandum Decision and Order, filed pursuant to Federal Rule of Civil Procedure 52, constitutes the Court's findings of fact and conclusions of law.

## Findings of Fact

In making findings of fact in a bench trial, a trial judge must assess witness credibility; to determine what is believable and what is not. *See Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) ("It is within the province of the district court as the trier of fact to decide whose testimony should be credited. . .. And as trier of fact, the judge is 'entitled, just as a jury would be . . . to believe some parts and disbelieve other parts of the testimony of any given witness.'") (citations omitted). In doing so, the trial judge must "evaluate the . . . witness['s] demeanor, any

---

[1]    The Report and Recommendation was adopted by the Court on January 23, 2017. (Order Adopting R. & R., Jan. 23, 2017.)

previous inconsistent statements by [that] witness, as well as the witness's explanation for any such inconsistent statements." *Newman v. Herbst*, No. 09-cv-4313 (TLM), 2011 WL 684165, at *1 (E.D.N.Y. Feb. 15, 2011).

Consistent with that rule of thumb, the trial record revealed no disagreement regarding the fact that Soy Sauce is a Glatt Kosher Chinese restaurant located in Queens, (Pl. Ex. 2, at 1), that employees at least six individuals, including two sauté cooks, one deep fry cook, a packer, an all around helper and a delivery person. Trial Tr. ("Tr.") at 6-7. In an effort to prove that the restaurant met the $500,000 FLSA threshold of gross sales, plaintiff presented the trial testimony of four former Soy Sauce employees: the named plaintiff, Hanming Feng,[2] and the three opt-in plaintiffs, Man P. Yam, Tian Fu Zeng and Xiun Hui Zhang. As will become clear below, none of plaintiff's witnesses presented credible testimony as to Soy Sauce's gross sales.

A. Plaintiff Hanming Feng

Feng was the first witness called to the stand. He testified that he worked for Soy Sauce as an "all around helper," whose job duties included cooking rice, moving merchandise, cleaning and cutting meat and vegetables. (Tr. 6, 9.) Then, off to an inauspicious start, Feng could not place a specific beginning and end date for his employment at Soy Sauce, but believed he worked there "approximately" from October or November 2014 through April 2, 2015. (Tr. 7.)

Feng's testimony continued with an inconsistent description of the amount of rice he prepared. He testified that he cooked five to six "pretty big" pots of rice each day, but could not pinpoint how much rice each pot produced. (Tr. 9.) Within a series of three questions from the Court, he first answered that each pot fit 10 pounds of rice, then changed his testimony to 16

---

[2]     Although the final transcript reflects that the witness's name is Han Ming Feng, previous affidavits identify him as Hanming Feng. For purposes of this decision, the witness will be referred to as Hanming Feng.

pounds of raw rice, which would produce double the amount cooked, and, in the end, conceded that he "never make [sic] that calculation." (Tr. 9.) Finally, in a last wriggle, he testified that he could not answer how many orders one pot of rice could serve, and punted the question to the sauté cook. (Tr. 10-11.)[3]

At bottom, therefore, Feng was unable to provide consistent and credible testimony as to the amount of business Soy Sauce did each day. Feng initially testified that he saw Soy Sauce's order checks, but that he never counted how many were received each day because he "basically cook[ed] rice nonstop."[4] (Tr. 11.) This, notably, directly contradicted his sworn affidavit in which he stated that he had to see every order check to do his job and that there were between 200 to 300 checks each day. (Tr. 17.)

The fact that he was too busy cooking rice to count the number of order checks he saw, did not cause Feng to miss a beat in pressing on to testify that each of the restaurant's orders were usually between $15-30 with some as high was $1,000. (Tr. 11-12.) When presented with his sworn affidavit in which Feng stated he had seen "all the checks for orders," however, Feng waffled. (Tr. 16). He first qualified that he only saw checks for big orders over $100, but he then seemed to reassert that he saw even the small checks. (Tr. 16-17.) Only a few moments later, however, he stated that would "sometimes" look at and "remember[ed] some" total dollar amounts from these checks. (Tr. 19.) Later still, when presented with an actual order check,

---

[3] Although a patently remote and speculative connection to the computation of revenue, it was the only basis for testimony creeping through an estimate of gross sales. The testimony fell short of its destination.

[4] Remarkably, when asked by his own lawyer point blank for an estimate of how many orders Soy Sauce received per day Feng responded, "No, I don't, but I can only say I cook a lot of rice." (Tr. 12.) Moreover, his testimony that he cooked rice all day is later discredited by his statement that, after bringing the rice up from the basement and putting it in the pot, he would turn to other tasks because the cooker was automatic. (Tr. 14-15.)

Feng could not point to the dollar value of the order and stated "I didn't look at the amount. I didn't look at the amount." (Tr. 20.)

Even if the dollar totals of each order were printed on the order checks, and even if, in the unlikely event, Feng looked at, and remembered, them, the fact that they were displayed in the kitchen when Feng testified that he worked mainly in the basement, points to Feng's inability to provide even a rough estimate as to how much business Soy Sauce did each day. (Tr. 18.) The lead off witness did not reach first base.

B. Man Po Yam[5]

Next, Man Po Yam testified that he worked as a sauté cook at Soy Sauce but, like Feng, he was unable to precisely identify his dates of employment. (Tr. 23-24.)[6] Yam began by disagreeing with Feng's testimony concerning the amount of rice Soy Sauce cooked each day, stating that the restaurant cooked seven or eight pots every day, as opposed to five or six, and that each pot cooked 16 pounds of dry rice, which translated to around 25 pounds cooked. (Tr. 27.) Extrapolating from the broadly estimated amount of rice cooked, Yam initially said that he prepared between 100 to 200 orders per day and that his co-sauté cook prepared the same amount. (Tr. 29-30.) The wildly divergent range of estimate had a 100% variation between the high and low ends of the range. In any event, only a few questions later, Yam testified that he prepared about 100 orders including rice *and* noodle dishes. (Tr. 31.) The net result was that his

---

[5]     Although the final transcript reflects that the witness's name is Man Po Yan, his previous affidavit identifies him as Man Po Yam. For purposes of this decision, the witness will be referred to as Yam.

[6]     Yam stated that he worked sometime before Soy Sauce's grand opening in January 2014 but provided varying answers with respect to his end date – first stating that he worked until June of 2014 then amending his answer to April or May. (Tr. 23.) As with the other witnesses, these failures of recollection weigh heavily against the witnesses called specifically to provide credible evidence as to Soy Sauce's gross revenues for the relevant period of time.

testimony as to exactly what and how he prepared orders each day, much less what Soy Sauce's revenues were, was unclear.

His credibility did not improve when other topics were raised. Yam testified that a typical lunch dish at Soy Sauce cost $7-8 and that, when served as dinner, the same dish cost $20. (Tr. 25.) Any significance of that testimony was undermined by his acknowledgement that he could not read Soy Sauce's menu because it was in English. (Tr. 26.) In response to a question seeking the basis of his testimony since he acknowledged that he could not read the menu, Yam said, essentially, that his answer was informed by his various years in the restaurant business. (Tr. 26.) What was obvious is that, throughout his revenue-related testimony, Yam lacked any insight into Soy Sauce's actual pricing. In fact, he expressly stated that "[t]he boss . . . would not allow" him to examine the order checks to see the dollar amounts, just as it was "for every restaurant."[7] (Tr. 32-33.) Then came a telling admission, when asked about a specific menu item's price, Yam responded: "I don't know. I'm the stir fry cook there. I don't get involved with that. . . . How could I know how much you're selling it for?" (Tr. 36-37.) In a final *coup de grace*, Yam was asked by plaintiff's counsel if he ever calculated how much "[i]n terms of sales that you generated for Soy Sauce each day," to which he responded no, that he "just cook[ed]" and "[didn't] get involved in the other departments." (Tr. 40-41.)

C. Tian Fu Zeng

As the third witness, Zeng testified that he worked at Soy Sauce as a fry cook and, with an even bumpier start than Feng or Yam, Zeng struggled to remember even the approximate

---

[7]     This testimony flatly calls into question Yam's assertion that he could estimate Soy Sauce's sales based on his other experience; certainly, if Yam was not allowed to examine checks at *any* restaurant, it begs the question of how he could ascertain the average price of dishes at other Chinese restaurants.

years that he worked at Soy Sauce. (Tr. 43-44.) Notwithstanding this troubling lack of memory, Zeng testified that he could recall how many pounds of various meats he fried each day and how much that generated, in whatever period that was, over two years ago. (Tr. 45-46.) This testimony is simply too incredible to believe. Moreover, when asked how much money his cooking generated for Soy Sauce, he stated that it was "[d]ifficult to say" and, in direct contradiction of a prior submission to the Court, that he did not know if he ever made such calculations. (Tr. 46-47.) Although Zeng estimated, based on his opinion, that a business with six employees had to make at least $600,000 per year, he provided no basis for his assertion. (Tr. 47-48.)

D. Xi Hui Zhang

As plaintiff's final witness, Zhang testified that he worked as a fry cook at Soy Sauce and started, he said, "sometime in April 2014" and worked "until maybe the end of June." (Tr. 53.) Zhang testified as to approximately how many items he fried each day in his brief stint at Soy Sauce, but he did not know the price for some items and offered only estimates as to others. (Tr. 53-55.) This lack of precise knowledge may stem from the fact that, as Zhang admitted, the computer on which he received orders did not display prices. (Tr. 54.) He also testified that he never estimated how much money he generated for Soy Sauce in sales. (Tr. 55.) Overall, the value of his testimony was miniscule.

E. Failure of Proof

It is readily apparent that, individually and collectively, the witnesses called by plaintiff could not and did not credibly testify as to Soy Sauce's gross sales generally much less for the time period relevant to the FLSA claims. The fact that each could not remember their dates of employment at Soy Sauce, but, yet, professed to recall detailed information about their daily

7

output, such as the pounds of chicken fried per day or the price of certain menu items even though they could not read the menu or saw dollar amounts on order checks, renders their testimony about revenue unbelievable. Moreover, in a death knell, none of the witnesses testified that they could recall, or that they ever even calculated, the amount of revenue the restaurant generated daily, let alone its actual gross sales.[8]

## Conclusions of Law

In relevant part, FLSA "provides federal minimum wage and overtime protections for employees that fall within its scope." *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 342 (E.D.N.Y. 2014). To come under the federal statute's protections, however, an employee must either be "(1) 'engaged in commerce or in the production of goods for commerce,' (individual coverage) or (2) 'employed in an enterprise engaged in commerce or in the production of goods for commerce' (enterprise coverage)." *Id.* (citing 29 U.S.C. § 206(a) and § 207(a)(1)). Under enterprise coverage, a plaintiff must establish that he "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). The federal wage and hour law provides that such an enterprise is one with (1) "employees engaged in commerce . . . or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) an "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

It is a well-established wage and hour ground rule that a wage earner plaintiff "bear[s] the burden of proof to establish all claims and damages by a preponderance of the evidence."

---

[8]     Punctuating the incredibility of the broad guesswork testimony of these witnesses, it directly contradicts prior affidavits submitted to the Court in which Yam and Zeng asserted that they calculated the dollar amount of food they cooked for Soy Sauce per day.

*Choudry v. Durrani*, No. 14-cv-4562, 2016 WL 6651319, at *5 (E.D.N.Y. Nov. 10, 2016) (citation omitted) (alteration in original). Not surprisingly then, because "[e]mployee coverage is an element of [a] plaintiff's FLSA claim," the plaintiff bears the burden of proving that he is, in fact, covered. *Jian Long Li v. Li Quin Zhao*, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014). In this case, that Soy Sauce enjoyed at least half a million in annual gross sales.[9] Feng failed to carry his burden.

Specifically, at trial, plaintiff's evidence consisted of untethered testimony from four former Soy Sauce employees and two Soy Sauce menus. The sum of this evidence comes nowhere close to establishing Soy Sauce's gross sales in excess of $500,000 as is required to establish the existence of FLSA coverage. *See* 28 U.S.C. § 203(s)(1)(A). By their words and demeanor, the testimony offered by the employee witnesses was incredible, wildly speculative and, in many instances, even contradictory. Frankly, no reliable calculations of anything could be based upon it. Plaintiff, furthermore, specifically declined to offer sales returns filed by Soy Sauce with New York sales tax authorities or any other documentation that might have been available to plaintiff through discovery. Failing to carry the burden to establish this element of his FLSA claim, the Court must dismiss plaintiff's federal claims.

## Conclusion

For the foregoing reasons, plaintiff's FLSA claims are dismissed on the merits because plaintiff has failed to establish by a preponderance of the evidence the element of his claim that defendants were subject to FLSA coverage at the time of the alleged violations. *See, e.g.,*

---

[9] Because the Court already determined during summary judgment that the plaintiff did not qualify under individual coverage, and that the first prong of enterprise coverage had been met, the only threshold issue plaintiff had to prove was whether enterprise coverage applied, and specifically, whether Soy Sauce had gross sales not less than $500,000. (*See* R. & R., ECF No. 76, at 7, 9-10, 14.)

*Salustio v. 106 Columbia Deli Corp.*, 15 Civ. 6857 (GWG), 2017 WL 3736695, at *7 (S.D.N.Y. Aug. 30, 2017) (noting that the failure to establish FLSA's $500,000 requirement does not divest the court of subject-matter jurisdiction but simply means that plaintiffs failed to meet their burden of proof on those claims and collecting cases); *Rocha*, 44 F. Supp. 3d at 344-45 (same). In light of this finding, on its own motion, the Court reconsiders its entry of default against Soy Sauce, vacates that Order, and dismisses the claims against it in the same manner as it has dismissed the parallel claims against defendant Borenstein. *See* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause. . ."); *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 365-66 (S.D.N.Y. 2003) (vacating, *sua sponte*, its own entry of default judgment against a defendant and staying plaintiff's claims in light of an ongoing arbitration).

The Court having dismissed all claims over which it had original jurisdiction, declines to exercise supplemental jurisdiction over plaintiff's state law claims which are dismissed without prejudice and with leave to refile them in a state court of appropriate jurisdiction.[10] 28 U.S.C. § 1367(c) (providing that a court "may decline to exercise supplemental jurisdiction," if it has "dismissed all claims over which it has original jurisdiction").

---

[10]    Although plaintiff's complaint originally included a claim alleging that defendants filed fraudulent tax returns in violation of 26 U.S.C. § 7434, (Am. Compl. ¶¶ 82-84, ECF No. 1), that claim was subsequently abandoned by plaintiff. In the proposed joint pre-trial order, plaintiff failed to identify that claim as one to be tried. (Proposed Pretrial Order, ECF No. 89.)

The Clerk of Court is directed to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York
December 11, 2017

/s/ USDJ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge